UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ANTONIO JACKSON ET AL | CIVIL ACTION NO. 5:14CV1045 |
| VERSUS | JUDGE HICKS |
| YRC INC. ET AL | MAGISTRATE JUDGE HAYES |

**MEMORANDUM ORDER**[1]

Before the undersigned Magistrate Judge, on reference from the District Court, is a "Motion to Compel DNA Testing," [doc. # 29], filed by Defendants YRC, Inc. and William Dearman. Plaintiffs oppose the Motion. [doc. # 31]. For reasons assigned below, the Motion is **GRANTED**.

**Background**

On April 28, 2014, Plaintiffs Antonio Jackson and Jamario Lougin filed a Petition for Damages against Defendants in the First Judicial District Court, Parish of Caddo, State of Louisiana, seeking survivor and wrongful death damages resulting from the death of Willie Roy Jackson, Jr. ("Decedent"). [doc. # 1-3]. Plaintiffs allege, *inter alia*, that as the surviving biological children of Decedent, they have standing to seek the requested damages. *Id.* at 4. On May 27, 2014, Defendants removed the matter on the basis of diversity jurisdiction. [doc. # 1].

Plaintiffs filed an amended, supplemental complaint[2] on September 5, 2014, and added

---

[1] As this is not one of the motions excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this Court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

[2] Plaintiffs filed a second supplemental complaint on December 8, 2014. [doc. # 34].

the following allegation:

> Willie Jackson, Jr. is the biological father of the plaintiffs, ANTONIO JACKSON and JAMARIOA LOUGIN, for the following reasons, among others:
>
> > a. An Arkansas State Court held Willie Jackson, Jr. to be the biological father of both Antonio Jackson and Jamario Lougin . . . ;
> >
> > b. Willie Jackson, Jr. is listed as the father on Antonio Jackson's Birth Certificate;
> >
> > c. Willie Jackson, Jr. is listed as the father on Jamario Lougin's Birth Certificate;
> >
> > d. The mother of Antonio Jackson, Sharon Lougin, did not have sexual relations with any other person other than Willie Jackson, Jr. at the time Antonio Jackson was conceived;
> >
> > e. The mother of Jamario Lougin, Sharon Lougin, did not have sexual relations with any other person other than Willie Jackson, Jr. at the time Jamario Lougin was conceived;
> >
> > f. Sharon Lougin lived with Willie Jackson, Jr. at the time Antonio Jackson was conceived;
> >
> > g. Sharon Lougin lived with Willie Jackson, Jr. at the time Jamario Lougin was conceived;
> >
> > h. Willie Jackson, Jr. openly and continuously acknowledged to Sharon Lougin and others that he was the biological father of Antonio Jackson and Jamario Lougin;
> >
> > i. Sharon Lougin received child support payments from Willie Jackson, Jr. for the care and support of Antonio Jackson and Jamario Lougin;
> >
> > j. Willie Jackson, Jr. remained in contact with Antonio Jackson and Jamario Lougin, communicating with them through youth and young adulthood, and spending time with them often in the years prior to his death;
> >
> > k. Antonio Jackson and Jamario Lougin were recognized as the children of Willie Jackson, Jr. in the obituary of Willie Jackson, Jr.;

[doc. # 20 (alterations added)]. Plaintiffs also added an additional request: "That the Court take

judicial notice, recognize and give full faith and credit to the attached Arkansas judgment of paternity and hold Antonio Jackson and Jamario Lougin to be the biological children of the decedent, Willie Jackson, Jr." *Id.* at 4.

On October 15, 2014, Plaintiffs filed a Motion for Partial Summary Judgment, [doc. # 22], and argued that there is no genuine issue of material fact as to their standing, by virtue of their status as the biological children of Decedent, to bring the instant action. Defendants oppose the Motion and argue that they "have not yet been given the opportunity to conduct necessary discovery regarding plaintiffs' paternity claim, specifically including DNA testing that will show whether plaintiffs are indeed the biological sons of Willie Roy Jackson, Jr." [doc. # 24, p. 2].

Defendants filed the instant "Motion to Compel DNA Testing" on November 10, 2014. [doc. # 29]. They ask the Court to order Plaintiffs "to submit to the collection of blood samples in order to determine whether they are the biological children of decedent . . . ." *Id.* at 1. Plaintiffs oppose the Motion and argue only that the Court cannot compel DNA testing because the Full Faith and Credit Clause requires the Court to give effect to a prior Arkansas court decision that declared Decedent the father of Plaintiffs. [doc. # 31].

The matter is now before the Court.

## **Law and Analysis**

Citing LA. REV. STAT. § 9:396, Defendants contend that "Louisiana law mandates DNA testing to determine paternity." [doc. # 29-1, p. 2]. Section 396(A) states, in pertinent part:

> (1) Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact . . . the court may, on its own initiative, or shall, under either of the following circumstances, order the mother, child, and alleged father . . . to submit to the collection of blood or tissue samples, or both, and direct that inherited characteristics in the samples, including but not limited to blood and tissue type, be determined by appropriate testing procedures:

3

\* \* \*

>   (b) Upon motion of any party to the action made at a time so as not to delay the proceedings unduly.
>
>   (2) If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require.

LA. REV. STAT. § 9:396(A).

Here, paternity is clearly a relevant fact in the sense that Plaintiffs must be the children of Decedent in order to recover. *See Turner v. Busby*, 883 So. 2d 412, 417 (La. 2004) (recognizing that "the critical requirement for classification of a person as a child in a wrongful death and survival action is the biological relationship between the tort victim and the child."). However, Plaintiffs argue that paternity is not relevant because an Arkansas court has "already determined that the decedent . . . is the biological father . . . ." [doc. # 31, p. 1]. Plaintiffs refer to a suit that Sharon Lougin, Plaintiffs' mother, filed against Decedent sometime in 1996 asking the Chancery Court of Union County, Arkansas to declare Decedent the father of Plaintiffs and to order Decedent to pay child support. [doc. # 18-3, p. 1]. There, Lougin obtained a default judgment and the court declared that Decedent was Plaintiffs' father. *Id.* at 4. According to Plaintiffs, this Court must accord the prior default judgment full faith and credit. [doc. # 31].

"The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give the same preclusive effect to state court judgments that those judgments would receive in the courts of the state from which the judgments emerged." *Raju v. Rhodes*, 7 F.3d 1210, 1214 (5th Cir. 1993) (citation omitted); *see also Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000) (noting that federal courts must apply state preclusion principles when asked to give preclusive

4

effect to a state court judgment). The Act "has long been understood to encompass the doctrines of res judicata, or 'claim preclusion,' and collateral estoppel, or 'issue preclusion.'" *San Remo Hotel, L.P. v. City and Cnty. of S.F., Cal.*, 545 U.S. 323, 336 (2005) (citing *Allen v. McCurry*, 449 U.S. 90, 94-96 (1980)). Here, Plaintiffs do not specify whether they seek to invoke res judicata or collateral estoppel.

Nevertheless, in Arkansas, res judicata encompasses claim preclusion and issue preclusion (collateral estoppel):

> Under claim preclusion, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim. Claim preclusion (res judicata) bars not only the relitigation of claims which were actually litigated in the first suit, but also those which could have been litigated. Where a case is based on the same events as the subject matter of a previous lawsuit, claim preclusion will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. Under issue preclusion (collateral estoppel), a decision by a court of competent jurisdiction on matters which were at issue, and which were directly and necessarily adjudicated, bars any further litigation on those issues by the plaintiff or his privies against the defendant or his privies on the same issue.

*Crockett v. C.A.G. Invs., Inc.*, 381 S.W.3d 793, 799 (Ark. 2011). For claim preclusion to apply, both suits must involve the same parties or their privies. *Hardy v. Hardy*, 380 S.W.3d 354, 358 (Ark. 2011). Similarly, although issue preclusion "may be asserted by a stranger to the first judgment, the party against whom it is asserted must have been a party to the earlier action and must have had a full and fair opportunity to litigate the issue in the first proceeding." *Id.* at 357. Here, neither doctrine applies because neither Defendants nor their privies were involved in the prior Arkansas proceeding.

Accordingly, Plaintiffs' argument with respect to the relevancy of paternity in the instant action is unfounded. This is not to say, however, that DNA testing is therefore mandatory. The

Louisiana Supreme Court, in *In Interest of J.M.*, held that before [LA. REV. STAT. § 9:396] is triggered and a court order for blood testing [is] issued, the moving party must first show that there is a reasonable possibility of paternity." *In Interest of J.M.*, 590 So. 2d 565, 571 (La. 1991). If the moving party seeks to prove non-paternity, the movant must demonstrate a reasonable possibility of a "lack of paternity." *See Lastrapes v. Willis*, 635 So. 2d 1281, 1283 (La. App. 3 Cir. 1994). Here, Defendants have met this burden.

Plaintiffs adduce the Arkansas Order described above, their birth certificates naming Decedent as the father pursuant to the Arkansas Order, Decedent's obituary naming Plaintiffs as Decedent's children, Sharon Lougin's affidavit, and their own affidavits. [doc. #s 20-1; 22-3]. Sharon Lougin, attests, *inter alia*, to the following: (1) that she did not have sexual relations with anyone other than Decedent at the time Plaintiffs were conceived; (2) that she lived with Decedent in El Dorado, Arkansas when Plaintiffs were conceived; (3) that Decedent openly and continuously acknowledged that he was Plaintiffs' father; (4) that she received child support from Decedent; and (5) that Decedent remained in contact with Plaintiffs "through youth and young adulthood," and often spent time with Plaintiffs "in the years prior to his death." [doc. # 20-1, p. 7-8]. Plaintiffs' affidavits largely track their mother's affidavit. [*See* doc. # 22-3].

However, this evidence is not conclusive. As noted, the Arkansas Order is not accorded preclusive effect. In addition, while the signing of a birth certificate constitutes an acknowledgment and creates a presumption of paternity,[3] Decedent did not sign Plaintiffs' birth certificates. [*See* doc. # 20-1, p.1-2]. Thus, the certificates arguably amount to less than a presumption of paternity. *See Matter of Succession of Brown*, 522 So. 2d 1382, 1385 (La. App.

---

[3] LA. CIV. CODE art. 196.

2 Cir. 1988) ("The fact that a father is named in or on a birth certificate is not considered a formal acknowledgment or declaration of paternity unless the father *signs* the certificate."); *Succession of Savoy*, 511 So. 2d 59, 61 (La. App. 3 Cir. 1987) (noting that the fact that others place someone's name in a child's birth records does not constitute an acknowledgment of paternity).

Moreover, in contrast to Plaintiffs' proffered affidavits, Defendants adduce evidence indicating that Decedent lived and fathered a child with another woman when Plaintiff Antonio Jackson was conceived, lived in Grambling, Louisiana—as opposed to El Dorado, Arkansas—when Plaintiff Jamario Lougin was conceived, and expressed doubts to his family members that he was Plaintiffs' father. [doc. # 24-2, p. 1-2]. Upon consideration, Defendants have sufficiently demonstrated that there is a reasonable possibility that Decedent was not Plaintiffs' biological father.

## Conclusion

For the foregoing reasons, **IT IS ORDERED** that Defendants' "Motion to Compel DNA Testing," [doc. # 29], is **GRANTED** and that Plaintiffs shall submit to DNA blood testing **within twenty-eight (28) days** from the Date of this Order to determine Decedent's biological relation to Plaintiffs.

In Chambers, at Monroe, Louisiana, this 9th day of December 2014.

Karen L. Hayes
United States Magistrate Judge